<hr/>

## W. LEE HINSON *v.* THE STATE.

1. CRIMINAL LAW. *Homicide. Previous threats ; case in judgment.*

> On the trial of the defendant, Hinson, for murder, evidence was offered in his behalf that some months previous to the homicide he had been shot from ambush and wounded ; that after that, Simmons, the deceased, had been informed by a friend that he, Simmons, was charged with having instigated the shooting, whereupon Simmons stated in the presence of several that he " would slap the jaws of any one who had so charged him, and would compel him to sign a lie-bill, and shoot his head off." This remark was communicated to the accused several weeks before the killing. *Held*, that such evidence was not admissible as showing a threat by the deceased against the accused.

2. SAME. *Evidence of previous threats. Overt act not proved. Case in judgment.*

> In a case of homicide there was evidence that the accused came near to the store of the deceased, and while there the two became engaged in a quarrel, during which the deceased slapped the accused on the cheek with his open left hand, and immediately turned half around and threw his right hand down by his side and somewhat behind him, and that this occurred just as the defendant drew his pistol and fired the fatal shot. The deceased at the time had on neither coat nor vest, and was visibly unarmed. *Held*, that this did not show an overt act by the deceased to justify the introduction of evidence of previous threats by him against the accused.

FROM the circuit court of Pike county.

HON. J. B. CHRISMAN, Judge.

The appellant, Hinson, was convicted of the murder of W. F. Simmons, and sentenced to life imprisonment.

The facts connected with the homicide, so far as it is necessary to

state them, were as follows :    On the day of the killing the appellant came to the store of the deceased, and while near the door, was requested by the deceased to leave.   A short time prior to that Simmons had had a difficulty with Con. Hinson, brother of the defendant, and one Holmes, and at the time the homicide occurred a charge was pending against Holmes for carrying concealed weapons, and the trial was arranged to occur on that day at a house very near to the store of the deceased.   The Hinsons had come to attend this trial, and there was evidence that the appellant during his quarrel with the deceased accused him of having caused the arrest of Holmes, and stated that he, the appellant, was on hand to see Holmes out of the trouble.   On being directed to leave the store the defendant walked into the street, and was followed by Simmons.   A quarrel there arose between them during which the deceased slapped the accused on the jaw with his open left hand, and the latter immediately drew a pistol and fired two shots, each of which took effect in the body of Simmons, causing his death in a few hours.

The evidence showed that at the time of the killing the deceased had on neither a coat nor vest, but was in his " shirt sleeves," and was not armed.

There were many eye-witnesses to the shooting, and all, except two, concur in testifying that during the difficulty the deceased made no hostile demonstration toward the accused except the slap with his left hand already mentioned, and that he made no movement as if to draw a weapon.

Two witnesses for the accused, one his brother and the other his half-brother, swore that at the time the deceased slapped the accused in the face with his left hand, he threw his right hand down by his side and somewhat behind him, and that this occurred just as the defendant drew his pistol and fired.   The witnesses could not say why the deceased made this motion of his hand.

After the introduction of this evidence the defendant offered to prove by the same witnesses that about three or four months before the homicide occurred, the accused had been shot by some unknown person from ambush ; that the deceased, a few weeks be-

fore being killed, received a note from a friend telling him that he, the deceased, was charged with having caused the shooting of Hinson ; that this note was read by the deceased to a number of persons at the time he received it, and that he there stated that he " would slap the jaws of any man who had so charged him ; would compel him to sign a ' lie-bill ' and shoot his d——n head off ;" that this remark was communicated to Hinson, the accused, before the shooting.

By the same witnesses the defendant offered to prove that the deceased, a few weeks before the homicide, had been engaged in a difficulty with Con. Hinson, brother of the accused, and had drawn from the right pocket of his pantaloons a pistol and exhibited it in a rude and threatening manner, and that this was while he was without coat or vest, and that all this was told to the accused. The purpose of this evidence was presumably to show that the accused had a right to interpret the actions of the deceased during the difficulty in the light of his knowledge of this occurrence, and to reasonably expect that he would, in a similar manner, produce a pistol.

All of the proffered testimony above referred to was excluded by the court, to which the defendant excepted.

The opinion is restricted to a consideration of the action of the court in excluding the evidence offered to show previous threats, which is the principal assignment of error.

*H. Cassedy* and *J. C. Lamkin,* for appellant.

1. The evidence as to the previous threats should have been admitted. The overt act was fully shown. The threat of Simmons had been in part executed by the slap with his left hand, thus indicating to Hinson that he did not intend to engage in a hand-to-hand encounter, but reserved his right hand for a more deadly assault with a weapon with which to consummate the threat already made. Not only did he reserve his right hand, but threw it suddenly down by his right side and behind him. Hinson, after the communication of this threat, had the right to be on the alert, and to interpret any conduct of Simmons indicating hostility by his knowledge of the threats. *Kendrick* v. *The State,* 55 Miss. 436.

The jury, though instructed to place themselves in the position of the accused at the time, were yet denied the knowledge that he had. He was judged by the act, uncoupled with the knowledge that his life had been threatened, and was denied the benefit of the quickened apprehension excited by this knowledge.

2. It was not only competent but very important to prove that the deceased had, a few weeks previous to being killed, drawn a pistol on another, and produced it from his pocket, when he had on neither coat nor vest. This was known to Hinson, and he had a right to expect that the deceased would again do so, and the fact that he was in his shirt sleeves is thus not a fact from which the accused could presume the absence of a weapon. The right of the accused to shoot the deceased was not dependent on his seeing a pistol in his hands, or even on his person. It is sufficient if the declarations and the demonstrations of the deceased were such as reasonably to excite the apprehension of an intention to kill or to do bodily harm. *Bangs* v. *The State*, 60 Miss. 570.

3. The declarations made by Simmons, and which were excluded by the court, were a direct threat to "shoot the head off" the man who had charged him with instigating the shooting of Hinson. It plainly meant that he would do this whenever the man who so charged him could be found. Admitting that this boast was not true, yet Hinson had the right to believe that he was prepared to execute the threat then and there, especially as he had partially executed his threat by slapping defendant's jaw.

4. As to what constitutes an overt act, and the admissibility of threats in connection with such act, counsel cited and discussed the cases of *Guice* v. *The State*, 60 Miss. 714, and *Moriarty* v. *The State*, 62 Ib. 661.

*R. N. Miller* and *Geo. S. Dodds*, for the state.

1. The offered proof was inadmissible because it did not amount to a threat against the accused. It is not pretended that Simmons knew who had accused him of causing the shooting of Hinson. The letter from his friend did not inform him. The remark of the deceased could not therefore be intended as a threat against the accused, because the letter which provoked the remark did not disclose the slanderer.

2. It was clearly inadmissible to prove what the deceased did in another difficulty, and the fact that he on one occasion engaged in a difficulty, and drew a pistol from his right front breeches pocket was not a proper matter to be shown here. If the proof relied on as an overt act, was that the deceased threw his hand to his right front breeches pocket there would be more plausibility ·in the argument as to its competency, but the testimony was that the deceased threw his hand down, and "sorter behind him."

3. If it had been a threat, it would have been inadmissible because there was no overt act proven, and no evidence from which the jury could infer one. There is no case, from *Newcombe's Case* to this time, where this court has held that the '· hip-pocket dodge," which was attempted to be sworn into this case, alone and unsupported, was proof of an overt act.

When a man is where he ought not to be, he must fly if flight will escape the danger. The danger to justify must be immediate, impending, and of great bodily harm. *Green* v. *The State*, 28 Miss. 687 ; *Dyson* v. *The State*, 26 Miss. 362 ; *Evans* v. *The State*, 44 Miss. 762 ; *Wesley* v. *The State*, 37 Miss. 327. Danger from blows with hands or feet do not justify the use of a deadly weapon. *Chase* v. *The State*, 46 Miss. 683.

Counsel for appellant have been misled as to what amounts to an overt act by the syllabus in *Holly* v. *The State*, 55 Miss. 424, which says "the term (overt act) embraces everything which evinces a present design to make an assault." The court did not so state, and the syllabus is misleading. On the contrary, no amount of mere assault will justify homicide. The court does refuse to define "overt act," but it would never hold that an act not evincing a design to kill or do great bodily harm, even though it evinced a design to make an assault, was an overt act justifying the taking of life.

COOPER, J., delivered the opinion of the court.

We find no error in the record. The evidence of what is called antecedent threats was properly excluded on two grounds :

First, because what is called a threat was no threat; and, second, because no overt act is shown which would have justified its intro-duction in evidence if it had been a threat.

*Judgment affirmed.*